**No. 25-3880**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

◆

**KAREN CAHALL,**

Appellant,

***v.***

**NEW RICHMOND EXEMPTED
VILLAGE SCHOOL DISTRICT
BOARD OF EDUCATION, ET AL.,**

Appellees.

◆

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION
CASE NO. 1:24-cv-00688

◆

**BRIEF OF APPELLEES**

◆

**BRIAN L. WILDERMUTH, ESQ. (0066303)**
**TABITHA JUSTICE, ESQ. (0075440)**
SUBASHI, WILDERMUTH & JUSTICE
50 Chestnut Street, Suite 230
Dayton, Ohio 45440
Tel:   (937) 427-8800
Fax:   (937) 427-8816
E-mail: tjustice@swohiolaw.com
**Counsel for Appellees**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................... iii

**CORPORATE DISCLOSURE** ..................................................................v

I.    **STATEMENT ON ORAL ARGUMENT** .......................................vi

II.   **STATEMENT OF THE ISSUES** ................................................. vii

III.  **STATEMENT OF THE CASE** ......................................................1

    A. SUMMARY OF THE FACTS SUPPORTED BY THE PLEADINGS .............................1

    B. PROCEDURAL HISTORY......................................................6

IV.   **SUMMARY OF THE ARGUMENT** ...........................................11

V.    **LAW AND ARGUMENT**..............................................................12

    **A.** DE NOVO STANDARD OF REVIEW ALLOWS THE APPELLATE COURT TO AFFIRM ON ANY GROUNDS, INCLUDING GROUNDS NOT RELIED UPON BY THE DISTRICT COURT....................................................................12

    **B.** THE CHALLENGED SCHOOL BOARD POLICY SETS FORTH AN ORDINARY EMPLOYMENT RULE THAT IS NOT UNCONSTITUTIONALLY VAGUE...............13

        **(1)** FIRST ISSUE FOR REVIEW: Courts apply a more lenient vagueness test for ordinary workplace rules authorized by government employers ...........................................................................13

        **(2)** SECOND ISSUE FOR REVIEW: The school board's controversial materials policy does not implicate the First Amendment requiring a more stringent vagueness review ..................................................16

        **(3)** THIRD ISSUE FOR REVIEW: Even under a more stringent vagueness review, the Board policy in this instance would provide constitutionally sufficient due process ...........................................................18

i

**C. The Employment Rule At-Issue in this case is Not Unconstitutionally Vague As Applied to the Employee's Conduct** ........................................24

    **FOURTH ISSUE FOR REVIEW:** The school board's controversial materials policies must only place a licensed teacher on notice that providing controversial books to students without prior approval could subject them to discipline. ...................................................................24

**D. THE NEW FACTUAL ALLEGATIONS INCORPORATED INTO THE PROPOSED AMENDED COMPLAINT DID NOT STATE A PLAUSIBLE CONSTITUTIONAL CLAIM** ............................................................................................27

    **FIFTH ISSUE FOR REVIEW:** Non-specific allegations about library books did not create plausible viability for otherwise legally insufficient vagueness claims ....................................................................................27

**E. ALTERNATIVELY, DEFENDANT MILLER IS ENTITLED TO QUALIFIED IMMUNITY** ..........................................................................................30

    **SIXTH ISSUE FOR REVIEW:** Even if there were some plausible constitutional violation alleged by the plaintiff, the school administrator would still be entitled to qualified immunity ..........................................30

**VI. CONCLUSION** ................................................................................32

**CERTIFICATE OF COMPLIANCE** ..................................................33

**CERTIFICATE OF SERVICE** ..........................................................34

**ADDENDUM** (Designation of Relevant District Court Documents)........................

# <u>TABLE OF AUTHORITIES</u>

## CASES

**Anderson v. Creighton**, 483 U.S. 635 (1987) ........................................... 31-32
**Arnett v. Kennedy**, 416 U.S. 134 (1974).................................14-15, 18-19, 20
**Ashcroft v. Iqbal**, 556 U.S. 662 (2009).................................................................29
**Ayotte v. Planned Parenthood of N. New Eng.**, 546 U.S. 320 (2006) ...........14
**Bell Atl. Corp. v. Twombly**, 550 U.S. 544 (2007) ......................................29
**Bethel Sch. Dist. v. Fraser**, 478 U.S. 675 (1986) ...................................... 22-23
**Carson v. U.S. Off. of Special Counsel**, 633 F.3d 487 (6th Cir. 2011) ...........28
**Codrington v. Dolak**, 142 F.4th 884 (6th Cir. 2025)........................................12
**Cope v. Heltsley**, 128 F.3d 452 (6th Cir. 1997) ..............................................33
**Corlett v. Tong**, No. 24-CV-78, 2024 U.S. Dist. LEXIS 170469 (S.D. Cal.
Sept. 20, 2024) ...............................................................................................20
**Dade v. Baldwin**, 802 F. App'x 878 (6th Cir. 2020)..................................15, 18
**Dickerson v. Napolitano**, 604 F.3d 732 (2d Cir. 2010) ............................ 25-26
**Doe v. Michigan State Univ.**, 989 F.3d 418 (6th Cir. 2021) ...........................29
**Doe v. Ohio State Univ.**, 219 F. Supp. 3d 645(S.D. Ohio 2016).......................1
**Evans-Marshall v. Bd. of Educ.**, 624 F.3d 332 (6th Cir. 2010)................ 16-18
**Farrell v. Burke**, 449 F.3d 470 (2d Cir. 2006)..................................................25
**Foman v. Davis**, 371 U.S. 178 (1962).................................................................28
**Fowler v. Bd. of Educ.**, 819 F.2d 657 (6th Cir. 1987) ................................22, 26
**Garcia v. Ceballos (Garcetti)**, 547 U.S. 410 (2006) ................................ 16-17
**Garrett v. Matthews**, 474 F. Supp. 594 (N.D. Ala. 1979) ..............................22
**Getz v. Swoap**, 833 F.3d 646 (6th Cir. 2016)....................................................30
**Guertin v. Michigan**, 912 F.3d 907 (6th Cir. 2019) .........................................29
**Holder v. Humanitarian Law Project**, 561 U.S. 1 (2010)................. 18, 25-26
**Johnson v. Morales**, 946 F.3d 911 (6th Cir. 2020)...........................................25
**Keating v. Univ. of S. Dakota**, 569 F. App'x 469 (8th Cir. 2014)..................20
**Kolender v. Lawson**, 461 U.S. 352 (1983) ............................................... 14-15
**Kutchinski v. Freeland Cmty. Sch. Dist.**, 69 F.4th 350 (6th Cir. 2023).........22
**Miller v. Calhoun Cnty.**, 408 F.3d 803 (6th Cir. 2005) ..................................28
**Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.**, 632 F.2d
21 (6th Cir. 1980)...........................................................................................28
**Papasan v. Allain**, 478 U.S. 265 (1986)...........................................................29
**Parker v. Levy**, 417 U.S. 733 (1974) ................................................................26
**Pearson v. Callahan**, 555 U.S. 223 (2009) ......................................................31
**Poulard v. Trustees of Indiana Univ.**, No. 2:16-CV-115, 2018 U.S. Dist.
LEXIS 167617 (N.D. Ind. Sept. 28, 2018) .......................................................20

**San Filippo v. Bongiovanni**, 961 F.2d 1125 (3d Cir. 1992)......................18, 22

**Sessions v. Dimaya**, 584 U.S. 148 (2018) ................................................. 15-16

**Summers v. Leis**, 368 F.3d 881 (6th Cir. 2004)...............................................30

**Tucker v. Middleburg-Legacy Place**, 539 F.3d 545 (6th Cir. 2008) ..............12

**Village of Hoffman Estates v. Flipside**, 455 U.S. 489 (1982)..................15, 20

**Walton v. City of Southfield**, 995 F.2d 1331 (6th Cir. 1993) ................... 31-32

**Washington State Grange v. Washington State Republican Party**, 552 U.S. 442 (2008)............................................................................................. 14-15

**Waters v. Churchill**, 511 U.S. 661 (1994).......................................................14

**Wishart v. McDonald**, 500 F.2d 1110 (1st Cir. 1974) .............................. 21-22

---

## STATUTES AND REGULATIONS

**Ohio Rev. Code § 3311.71**
**Ohio Rev. Code § 3319.16**
**Ohio Rev. Code § 3321.02**

---

## OTHER AUTHORITIES

New Richmond Exempted Village School District Board Policy 2240
Administrative Guideline 2520A (New Richmond EVSD)

## **CORPORATE DISCLOSURE**

Pursuant to 6th Cir. R. 26.1, Defendants-Appellees, the New Richmond Exempted Village School District Board of Education, Tracey Miller, Todd Wells, Tim Dufau, Robert Wooten, Jonathan Zimmerman, and Amy Story, disclose to this Court that they are not a subsidiary or affiliate of a publicly-owned corporation and that there is no publicly-owned corporation that has a financial interest in the outcome of these proceedings.

## I.  <u>STATEMENT ON ORAL ARGUMENT</u>

Appellees, the New Richmond Exempted Village School District Board of Education, Tracey Miller, Todd Wells, Tim Dufau, Robert Wooten, Jonathan Zimmerman, and Amy Story,[1] do not request oral argument.

---

[1] The district court dismissed the official capacity claims against the individual board members, and that dismissal is not before the Court on appeal.  Those individuals are listed here only because they remain personally named as Appellees.

## II.   STATEMENT OF THE ISSUES

1. FIRST ISSUE FOR REVIEW: Courts apply a more lenient vagueness test for ordinary workplace rules authorized by government employers.

2. SECOND ISSUE FOR REVIEW: The school board's controversial materials policy does not implicate the First Amendment requiring a more stringent vagueness review.

3. THIRD ISSUE FOR REVIEW: Even under a more stringent vagueness review, the Board policy in this instance would provide constitutionally sufficient due process.

4. FOURTH ISSUE FOR REVIEW: The school board's controversial materials policies must only place a licensed teacher on notice that providing controversial books to students without prior approval could subject them to discipline.

5. FIFTH ISSUE FOR REVIEW: Non-specific allegations about library books did not create plausible viability for otherwise legally insufficient vagueness claims.

6. SIXTH ISSUE FOR REVIEW: Even if there were some plausible constitutional violation alleged by the plaintiff, the school administrator would still be entitled to qualified immunity.

## III.    STATEMENT OF THE CASE

Karen Cahall received a three-day suspension from her job as an elementary school teacher, in part, because she knowingly incorporated controversial reading materials into her classroom without prior approval from a supervisor.  In response to the brief suspension, Cahall filed a federal lawsuit.  The district court correctly dismissed Cahall's complaint, finding there was no plausible constitutional violation.

### A. SUMMARY OF THE FACTS SUPPORTED BY THE PLEADINGS.

Cahall has been employed as a teacher in the New Richmond Exempted Village School District for over thirty years.  (Doc. 1, Complaint, ¶ 4, PageID#3)  During the 2023-2024 school year, Cahall taught third-grade math and science.  (Doc. 1-3, Exhibit 2 to Plaintiff's Complaint, PageID# 29)[2]

Cahall alleged that, before the 2023-2024 school year, she became aware that gender identity and other LGBTQ+ topics were considered controversial within the local school community.  (Doc. 1, Complaint, ¶¶ 27-33, PageID#8-9)  Cahall specifically alleged in her complaint that there had been "numerous complaints from

_____

[2] Normally, matters outside the pleadings may not be considered in ruling on a motion to dismiss unless the motion is converted to one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d). However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016).  In this case, Cahall incorporated the disciplinary notice as an express part of her pleadings.

community members opposing" a school district proposal to allow school staff to wear rainbow stickers or badges that would alert LGBTQ+ students that they were "safe" to confide in or seek advice from particular teachers. (*Id.* at ¶¶ 27, 29, PageID#8)  After these citizen complaints, the board of education prohibited the use of rainbow stickers for that purpose and prohibited the use of forms on which students could provide their preferred gender identity and gender pronouns. (*Id.* at ¶¶ 29-30, PageID#8-9)

Cahall alleged that, "[f]ollowing the controversy in the New Richmond District over the wearing of the Rainbow [sic] stickers in 2021," she sought to educate herself on the emotional needs of LGBTQ+ students. (Doc. 1, Complaint, ¶ 38, PageID#10)  In addition to educating herself on these controversial subjects, Cahall added four books to her classroom library that included LGBTQ+ characters. (*Id.* at ¶44, PageID#11)  Cahall alleges the books "deal with characters who are LGBTQ+ and are coming to terms with feeling different and excluded simply because they are LGBTQ+." (*Id.* at ¶48, PageID# 12)  Cahall intended for these books to "serve as a positive tool" for her students "to promote [her moral and religious] values for any LGBTQ+ student who might come to her for guidance or support." (*Id.* at ¶49, PageID#12)

Cahall alleges that, in late October, a parent complained to the district that four books with LGBTQ+ themes were in Cahall's classroom. (Doc. 1, Complaint,

¶55)  Cahall was given notice of the accusations, and she was given an opportunity for a pre-disciplinary meeting in which she could respond.  (*Id*.; Complaint, ¶57-60, PageID# 14)

In her complaint, Cahall alleges she has a sincerely held "moral and religious belief" that all children deserve to be respected, accepted and loved for who they are.  (*Id*. at ¶37, PageID# 10)  She alleges she had a "sincerely held moral and religious belief[] that LGBTQ+ youth needed to have access to safe spaces and safe people at school."  (*Id*. at ¶41, PageID# 11)  Cahall does not allege in her complaint that she informed any district employee of her alleged "beliefs" before she was notified of potential discipline for making LGBTQ+ content available to her elementary-aged students.  Cahall does not allege she ever sought to be excused from a work rule due to her alleged "religious" beliefs before the disciplinary hearing.

On November 6, 2024, Cahall was suspended for three days without pay. (Doc. 1-3, PageID# 29-30)  Cahall attached the "Notice of Suspension" to her civil complaint and relied upon it to support her causes of action in this case.  (*Id*.)  That notice, signed by Superintendent Tracey Miller, specifies that Cahall was suspended for:

> [Y]ou engaged in an intentional and serious violation of Board policy and procedure.  You acknowledged that you placed books in your third-grade math/science classroom library that contained themes and discussion of topics of a controversial nature that were not related to the instructional goals of the course of study and the level of maturity of the students in your classroom, as required by Board policy.  These

books included Ana on the Edge.  The Fabulous Zed Watson.  Hazel Bly and the Deep Blue Sea, and Too Bright to See.

You agreed that some of the topics contained in the books are controversial, although you do not believe that they should be.  You also agreed that you did not get permission to place these books in your classroom library.  You understood from what you referred to as the "rainbow controversy," that some of the topics discussed in the books were controversial."

You also knew the books were not acceptable because you asked for them to be placed in the library and were denied.  You subsequently placed the books in your classroom library without putting them through the established approval process.

(Doc. 1-3, PageID# 29-30)   That notice further goes on to find that Cahall intentionally defied the district's book approval process after she knew the books would be rejected for not being related to the instructional goals of the course of study or appropriate for the level of maturity of the students in the classroom.  (*Id.* at #30)

Cahall also attached the controversial materials policy to her complaint.  (Doc. 1-2, PageID# 27-28)   The policy places limits on "the introduction and proper educational use of controversial issues."  (*Id.* at PageID# 27)  The policy defines a "controversial issue" as "a topic on which opposing points of view have been promulgated by responsible opinion or likely to arouse both support and opposition in the community."  (*Id.*)  The policy provides that "[w]hen controversial issues have not been specified in the course of study, the Board will permit the instructional use of only those issues which may have been approved by the principal."   Cahall

4

challenges the language "controversial issue" and "instructional use."  Cahall argues she did not teach from the books that she placed in her classroom library.

Cahall's discipline letter also cites Administrative Guideline 2520A relating to controversial issues.  (Doc. 1-3, PageID# 29)  The district court found that this document is a public record that was accessible on the district's website.  (Doc. 25, Opinion,  PageID#  311-312,  citing  https://perma.cc/MK7E-GDYG)[3]  The administrative guideline governs the "selection of resource materials" for the district.  For instance, it provides that "[n]o print… materials which are not part of the district's basic or supplementary materials are to be used with students without prior review and approval.  It then specifies the "critical criteria by which such materials are to be reviewed" includes "the relationship to the course of study" and "the extent to which the content or presentation could create controversy amount students, parents, and community groups."  (*Id*.)  To the extent that the books in Cahall's classroom constitute a "library," the administrative guideline also provides that a teacher must obtain approval prior to the purchase of any materials that could be controversial, as defined by Policy 2240.  (*Id*.)

---

[3] As with documents attached to the complaint, the district court may also consider matters of public record in deciding a motion to dismiss without converting the motion into one for summary judgment.  *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Meyers v. Cincinnati Bd. of Educ*., 983 F.3d 873, 880 (6th Cir. 2020)).

## B. PROCEDURAL HISTORY

In response to the three-day suspension, Cahall subsequently sued the Board of Education, the Superintendent, and the individual school board members in their official capacities.  (Doc. 1, Complaint)  Cahall alleged that she had been subject to religious discrimination under the First and Fourteenth Amendments.  (Doc. 1, Complaint)  She further alleged that the school policy requiring approval of controversial materials was overly vague on its face and "as applied" to her under the Fourteenth Amendment.  Finally, she alleged a miscellaneous state law claim alleging that the school superintendent had engaged in criminal interference with civil rights.  While Cahall included only official capacity claims against the school board members, she asserted both individual and official capacity claims against Superintendent Miller.

The school district defendants filed a motion for judgment on the pleadings, arguing that Cahall's claims were legally insufficient.  (Doc. 12, Motion for Judgment on the Pleadings)  Cahall had failed to allege facts that could plausibly equate to a constitutional violation.  The official capacity claims against the Board members were redundant to the claims against the Board of Education as an entity.  Superintendent Miller further argued that, even if Cahall had sufficiently alleged a constitutional violation, he was entitled to qualified immunity because the

6

constitutional rights at-issue were not clearly established at the time of the three-day suspension.

Cahall filed a partial motion for judgment on the pleadings of her own, arguing that the court should find the Board's policy was unconstitutionally vague as a matter of law. (Doc. 16, Plaintiff's Motion/Response) She also opposed the school district defendants' dispositive motion and, in addition or in the alternative, she sought leave to amend her complaint. (*Id*. and Doc. 17, Motion to Amend)

On September 29, 2025, the district court issued an Opinion and Order dismissing Cahall's claims and denying her motion to amend as futile. (Doc. 25, Opinion) In analyzing the motion for judgment on the pleadings, the district court treated the new allegations in the proposed amended complaint as if those allegations had been included in the original complaint. (*Id*. at PageID# 317) This allowed the court to efficiently assess the merits of Cahall's motion to amend at the same time it considered the motion for judgment on the pleadings.

After a comprehensive analysis of the vagueness claims against the Board of Education, the district court ultimately held that the challenged board policy was not unconstitutionally vague. First, however, the court questioned why the school district defendants felt it necessary to argue that that the "controversial materials" policy did not implicate the First Amendment. (*Id*. at PageID# 319-320) The court felt that Cahall did not make an argument that she had a First Amendment right to

select reading materials for students. Therefore, according to the court, the school's argument in that regard was unnecessary. (*Id*. at PageID# 320) As discussed below, the district court's analysis misses an important point. Cahall did argue (and continues to argue) that a more stringent vagueness test was required in this case, because she believes the school board policy implicates her First Amendment rights. Because the policy does not implicate the First Amendment, the district court was ultimately correct in applying a standard vagueness test – just for different reasons than the district court cited.

The district court went on to find that the school board policy was not void for vagueness in this instance, because the policy clearly proscribed Cahall's specific conduct. (*Id*. at PageID# PageID#323-324) The Court noted that a person whose conduct is clearly proscribed by what might otherwise be a vague policy cannot assert a vagueness challenge under existing precedent. (*Id*.) The district court did not conduct a "severity of the consequences" analysis of the policy to determine what level of review was required, nor did the court otherwise respond to the school's argument that the policy at-issue was a workplace policy as opposed to a criminal statute or a civil statute with harsh consequences. Instead, the court held simply that there was no meaningful doubt that the district's controversial materials policy would have given Cahall sufficient notice that making controversial books

8

available to students in her classroom might subject her to discipline.    (*Id*. at PageID# 324-325)

In addressing the equal protection and religious discrimination claims, the district court found that Cahall failed to plead sufficient facts in either her original complaint or in her proposed amended complaint that would arise to the level of a constitutional violation.  (*Id*. at PageID# 330, 332)  In both instances, Cahall failed to plead sufficient facts to suggest that she was treated differently than a similarly situated comparator.  The court also found that Cahall did not maintain a First Amendment right, whether religious or expressive, to select reading materials for students.  However, in bit of a twist, the district court decided to dismiss these two claims <u>without prejudice</u> on the grounds that Cahall may be able to plead facts against the defendants that did give rise to a plausible claim.  (*Id*.)  The court offered some speculative ideas of facts that, if alleged in the future, might state a plausible claim for relief.  Because the Equal Protection and First Amendment claims were dismissed without prejudice, Cahall has not included these claims in her current appeal.

The district court did <u>not</u> address Superintendent Miller's request for qualified immunity.  Neither Cahall nor the district court pointed to any legal precedent that would have placed Superintendent Miller on notice that he could not constitutionally issue a three-day suspension to a teacher under circumstances like those alleged in

the complaint.  In fact, the district court specifically found there was no underlying constitutional violation on the facts alleged.  However, because the district court dismissed the claims against Superintendent Miller, he has not yet been deprived of the benefit of immunity.  In the event that Cahall files a new complaint, not only will there be res judicata and law of the case concerns, but Superintendent Miller will most certainly reiterate his right to immunity from the burdens and liabilities of further litigation.

On October 29, 2025, Cahall filed the current appeal.  (Doc. 27, Notice of Appeal)  In her briefing, she argues the district court erred in dismissing the Fourteenth Amendment vagueness claims in both the facial and as-applied format. (Doc. 12)  Cahall also argued that the district court erred in denying her motion to amend.  Cahall did not appeal the district court's dismissal of the official capacity claims against the individual school board members Wells, Dufau, Wooten, Zimmerman, and Story or the official capacity claims against the former superintendent.  As such, the issues in the current appeal are substantially more limited than those that had been before the district court. Only the vagueness claims against the Board and the individual capacity claims against Superintendent Miller remain at-issue.

The district court's decision finding that Cahall failed to plead a plausible constitutional violation in either her original or proposed amended complaint should be affirmed for the reasons discussed below.

## IV.    SUMMARY OF THE ARGUMENT

The district court correctly determined that Cahall failed to state a plausible claim for relief against the school district defendants. The district court correctly concluded that neither the allegations in Cahall's original complaint nor in her proposed amended complaint were sufficient to nullify the Board policy on vagueness grounds. The district court correctly concluded that the policy was not unconstitutionally vague as applied to Cahall. The district court also properly concluded that Cahall's equal protection and first amendment claims, as they were pleaded, failed as a matter of law. However, as to these latter claims, the district court dismissed those "without prejudice," which means that Cahall could technically re-file those claims. Consequently, the only claims currently on appeal are the facial and as-applied vagueness challenges.

This matter is before the Court on de novo review. Under that standard of review, the Court may affirm the district court's decision on any grounds supported by the record. In arguing that the school board's controversial materials policy is constitutionally vague, Cahall fails to give any consideration to the long-standing legal precedent that gives government employers wide latitude in drafting ordinary

workplace rules. While Cahall argues that such workplace rules can have severe consequences and should be subject to strict scrutiny, she only received a three-day suspension for sneaking controversial books into her classroom when she had already been told the books were inappropriate for elementary students. Even with no policy at all, the school district would have had every legal right to discipline a public-school teacher for such conduct. The district court's decision should be affirmed.

## V.    LAW AND ARGUMENT

### A. A DE NOVO STANDARD OF REVIEW ALLOWS THE APPELLATE COURT TO AFFIRM ON ANY GROUNDS, INCLUDING GROUNDS NOT RELIED UPON BY THE DISTRICT COURT.

"The district court's decision regarding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6)." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Under a de novo standard of review, the district court's decision must be affirmed if correct for any reason, including a reason not considered by the district court. *Codrington v. Dolak*, 142 F.4th 884, 892 (6th Cir. 2025).

A reasonable argument could be made that the district court erred when it did not at least address Superintendent Miller's request for qualified immunity in its decision. In addition, the district court may have erred when it dismissed the equal

protection and religious expression/free speech claims "without prejudice" despite accepting as true the factual allegations included in both the plaintiff's original complaint and the proposed amended complaint. The district court decided this case in such a manner as to put the Equal Protection and First Amendment claims beyond the reach of the Court in the current appeal. It dismissed the claims against Superintendent Miller such that he could not reasonably cross-appeal on the grounds that he has been denied the benefit of immunity. Nevertheless, this Court may affirm dismissal of the claims that are properly before the Court on any grounds supported by the record.

### B. THE CHALLENGED SCHOOL BOARD POLICY SETS FORTH AN ORDINARY EMPLOYMENT RULE THAT IS NOT UNCONSTITUTIONALLY VAGUE.

### (4) FIRST ISSUE FOR REVIEW: Courts apply a more lenient vagueness test for ordinary workplace rules authorized by government employers.

Cahall's principal argument on appeal is that New Richmond Board Policy 2240 (referenced herein as the "controversial materials" policy) is unconstitutionally vague.[4] Cahall presents both a facial and an "as applied" challenge to the policy, arguing that the policy infringes on her right to due process under the Fourteenth

---

[4] When the district court dismissed Cahall's vagueness claims, it reviewed Board Policy 2240 along with a related Administrative Guideline, AG 2520A, which the superintendent also relied upon in issuing the three-day suspension. Cahall challenges only the merits of Board policy 2240 and fails to offer any theory on why the administrative guideline does not provide her with additional clarity in understanding the policy.

Amendment.  While the policy applies only to licensed teachers, Cahall nevertheless argues that the words "controversial" and "instructional materials" are so vague as to deprive her and other teachers of fair notice of what is required of them in their jobs.

In support of her facial challenge to the school board policy, Cahall relies almost exclusively upon past constitutional challenges that arose outside the employment context.   In doing so, she ignores that the U.S. Supreme Court has long distinguished workplace policies from criminal or even civil legislation.  See, e.g., *Arnett v. Kennedy*, 416 U.S. 134, 158-62, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)(plurality opinion upholding a policy allowing dismissal for "such cause as will promote the efficiency of the service" against a vagueness challenge).   The government must have more flexibility to craft reasonable workplace regulations for its employees than it has when drafting a criminal code.  **"[A] public employer may, consistently with the First Amendment, prohibit its employees from being 'rude to customers,' a standard almost certainly too vague when applied to the public at large."** *Waters v. Churchill,* 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

The Supreme Court has also emphasized that "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008); see also *Ayotte v. Planned*

*Parenthood of Northern New Eng.*, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006).  A policy is so vague as to violate due process only when it either: (1) fails to inform ordinary people what conduct is prohibited; or (2) allows for arbitrary and discriminatory enforcement.  *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed. 2d 903 (1983).  Moreover, the level of precision required for a policy or statute to survive a vagueness challenge depends on the circumstances in which the policy or statute applies.   This Court has held that there is "substantially more room for imprecision in regulations bearing only civil, or employment, consequences, than would be tolerated in a criminal code."  *Dade v. Baldwin*, 802 F. App'x 878, 885 (6th Cir. 2020) (citing *Arnett*, *supra*, 416 U.S. at 159-60; *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed. 2d 362 (1982)).

Cahall argues that a more stringent vagueness test should apply to Board Policy 2240, because a teacher could be punished for failing to follow those rules and because her punishment becomes part of her personnel file, which is a matter of public record.  (Appellate Brief, PageID# 26-27)  She does not cite any case law for the position that ordinary workplace discipline requires an exacting vagueness review.  In fact, the decision in *Arnett* upheld a policy that was more ambiguous than the New Richmond policy, and that policy allowed for *dismissal* of an employee.  Dismissal is necessarily more severe than a three-day suspension.   Instead of

responding to the standard of review already in place for workplace rules, Cahall cites *Sessions v. Dimaya*, 584 U.S. 148, 138 S.Ct. 1204, 200 L.Ed.2d 549 (2018), for the position that all civil statutes and policies should be held to the same strict vagueness standards as criminal statutes.  But that is not what *Dimaya* says.  Rather, the plurality opinion in *Dimaya* specifically reaffirmed *only* that a more exacting vagueness standard should apply in the context of deportation cases.  *Dimaya*, 584 U.S. at 157.  The Court explained "that deportation is 'a particularly severe penalty,' which may be of greater concern to a convicted alien than 'any potential jail sentence.'"  *Id*.  Nothing in the *Dimaya* decision can possibly be interpreted to require an "exacting" vagueness standard in the context of the ordinary workplace rules of a public school district.  Certainly, a three-day suspension from a teaching position does not come close to the severity of being deported from the country.

   **(5) SECOND ISSUE FOR REVIEW: The school board's controversial materials policy does not implicate the First Amendment requiring a more stringent vagueness review.**

   Cahall also argues that a more stringent vagueness test should apply to Board Policy 2240, because, in her view, the policy interferes with the right of free speech or religion.  First, a policy controlling the selection of books and school materials to be used with public school students does not implicate the First Amendment under *Garcetti* or *Evans-Marshall*, *infra*.   "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Ohio law and well-established legal precedent make clear that teachers do not have unfettered discretion in selecting classroom materials. Indeed, in a case remarkably similar to the current one, the Sixth Circuit explained that teachers simply do not have a constitutional right to select books for their students. See, *Evans-Marshall v. Bd. of Edn. of the Tipp City Exempted Village School Dist.*, 624 F.3d 332, 341 (6th Cir.2010).

In that case, Evans-Marshall alleged her teaching contract was terminated because she included banned books on a list of books that high school students could select to read. Like the plaintiff in this case, Evans-Marshall alleged that she did not compel the students to read any particular book. The Sixth Circuit found the teacher had no constitutionally protected right to pick books for students. The Court explained, in part, that Ohio law specifically places control of school curriculum within the discretion of elected boards of education, not teachers.

> The key insight of Garcetti is that the First Amendment has nothing to say about these kinds of decisions. An employee does not lose "any liberties the employee might have enjoyed as a private citizen" by signing on to work for the government, but by the same token, the government, just like a private employer, retains "control over what the employer itself has commissioned or created": the employee's job. Garcetti, 547 U.S. at 422. And that insight has particular resonance in the context of public education. Every child in Ohio must attend school, see O.R.C. § 3321.02, providing public school teachers with a captive audience for their in-class speech, see Mayer, 474 F.3d at 479, and

providing a compelling reason for putting curricular choices in the hands of "someone [they] can vote out of office," id. at 479-80, or who is otherwise democratically accountable, see O.R.C. § 3311.71 (elected officials and other community institutions appoint school board members in certain municipal school districts).

*Evans-Marshall*, 624 F.3d at 341. Any teacher licensed in the State of Ohio must be presumed to know that school boards select curriculum, <u>not</u> teachers. This authority necessarily extends to the books made available for students to read in public classrooms. To the extent Cahall made books available to students, her conduct was not constitutionally protected as a matter of law. Absent a constitutionally protected right, Cahall's argument that Board Policy 2240 is subject to strict scrutiny falls apart.

**(6) THIRD ISSUE FOR REVIEW: Even under a more stringent vagueness review, the Board policy in this instance would provide constitutionally sufficient due process.**

Even if Board Policy 2240 did implicate the First Amendment, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct.1830, 170 L.Ed.2d 650 (2008)). Even where First Amendment values are at stake, "employment standards 'are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk'" of discipline. *Dade*, 802 F. App'x at 885 (quoting *San Filippo v.*

18

*Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992)(emphasis added)); *see Arnett*, 416 U.S. at 158-61.  The policy at-issue in this case is an ordinary employment rule that applies only to professional educators – teachers who are specifically trained in knowing and understanding what educational materials are appropriate for the students they teach.  As such, the case law relied upon so heavily by Cahall in the context of statutes, ordinances, or even governmental policies that apply to general members of the public is of little significance to this Court in deciding the current case.

When evaluating the employment rule in this case, the Court should consider whether an ordinary teacher exercising her training and common sense would have had at least fair notice of what was required by school board policy.  Federal law does not require such rules to be defined with great specificity, and even very broad rules have been affirmed by the courts.  Cahall has pleaded no facts in her complaint to suggest that teachers licensed in the State of Ohio would not understand what classroom materials might be considered "controversial" under the terms of the New Richmond's policy.  Cahall has pleaded no facts in her complaint to suggest that teachers in New Richmond did not understand what classroom materials would be considered "controversial" under the terms of the policy.  Cahall pleaded no facts in her complaint to suggest that she did not understand what classroom materials would be considered "controversial" under the language of the policy.

Unlike Cahall, the school district has relied upon case law arising in the context of ordinary workplace rules for the position that Board Policy 2240 was not unconstitutionally vague. For instance, in *Keating v. Univ. of S. Dakota*, 569 F.App'x 469 (8th Cir. 2014), a college professor received discipline for his behavior towards a colleague. He filed a federal lawsuit arguing that the university's policy that required faculty members to conduct themselves in a "civilly, constructively and in an informed manner" was too vague to provide him with fair notice of the conduct prohibited. The court explained, however, that where "an enactment does not impose criminal penalties, due process tolerates a lesser degree of specificity than it would from a criminal statute." *Id*. at 471, citing *Village of Hoffman Estates, supra*.

In *Poulard v. Trustees of Indiana Univ.*, N.D.Ind. No. 2:16 CV 115, 2018 U.S. Dist. LEXIS 167617 (Sep. 28, 2018), the plaintiff was also disciplined by his public university employer. He filed a federal lawsuit arguing that the sexual misconduct policy under which he was disciplined failed to provide a clear definition of what constituted "harassment." The Court disagreed, explaining that a government policy as to the expected conduct of employees "need not define every term to survive a vagueness challenge." Rather, the question in the public employment context is whether, when applying ordinary common sense, a reasonable employee could understand from those employment rules that certain conduct would put them at risk

20

of discipline.  See, also, *Corlett v. Tong*, S.D.Cal. No. 24-CV-78 TWR (MPP), 2024 U.S. Dist. LEXIS 170469 (Sep. 20, 2024).

Ohio law provides very broad authority for school districts to discipline and even discharge teachers "for good and just cause."  O.R.C. § 3319.16.  Most people would reasonably agree that these words are much more ambiguous than the terms of New Richmond's controversial materials policy.  Yet, no Ohio or federal court has found that language to be void for vagueness.  Here, Plaintiff alleges she received a three-day suspension for incorporating "controversial" materials involving gender identity and sexuality into her third-grade math and science classroom library without prior approval.  The Court must consider the level of specificity that is required of a school board policy in such circumstances, as defined by existing case law, and conclude that the Board policy meets constitutional muster.

In *Wishart v. McDonald*, a tenured sixth grade public school teacher was discharged when he carried, dressed, undressed and caressed a mannequin in public view on his property located in the town in which he taught. *Wishart v. McDonald*, 500 F.2d 1110 (1st Cir. 1974).  The school's dismissal regulation provided a tenured teacher could be dismissed only for "conduct unbecoming a teacher . . . or other good cause." *Id.* at 1111.  The court, applying *Arnett*, held the regulation was not void for vagueness as applied to Wishart because his behavior was fairly identifiable by an ordinary person as conduct unbecoming a teacher.  Therefore, the regulations gave

him notice that his conduct put him at risk of dismissal.  *Id.* at 1116.  The court stated, "The choice between specific rules and general standards is a difficult one; each has its unique costs. The real safeguard under a general standard is the common-law adjudicatory process and judicial review."  *Id.* at 1117 (citation omitted).

The Sixth Circuit agreed with the *Wishart* decision in *Fowler v. Bd. of Edn.*, 819 F.2d 657, 664 (6th Cir.1987).  In *Fowler*, the court reviewed a Kentucky statute that permitted teacher discipline for "conduct unbecoming a teacher."  The Court concluded this language was not unconstitutionally vague.  See also, *Kutchinski v. Freeland Community School Dist*., 69 F.4th 350, 360 (6th Cir. 2023)(Michigan school district policy prohibiting "gross behavior" not unconstitutionally vague); *Traore v. Baltimore Police Dept*., D.Md. Civil Action No. MJM-22-793, 2023 U.S. Dist. LEXIS 220600, at *66-67 (Dec. 12, 2023)(policy precluding police officers from having relationships with persons of "questionable character" not unconstitutionally vague);  *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992)("standards of sound scholarship and competent teaching" was not unconstitutionally vague); and *Garrett v. Matthews*, 474 F. Supp. 594 (N.D. Ala. 1979)("adequate cause" was not unconstitutionally vague).

The Supreme Court also has spoken on the question of how clearly ordinary school district rules must be defined from a procedural due process perspective.  See, e.g., *Bethel School Dist. v. Fraser*, 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d

549 (1986).  In *Fraser*, a student was disciplined when he publicly referred to another student in terms of an elaborate, graphic, and explicit sexual metaphor.  The Supreme Court concluded that the school disciplinary rule prohibiting "obscene" language was not unconstitutionally vague.  "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."  *Id*.

*Fraser* was in the context of a school district rule that limited the conduct of children and which subject those children to a potential loss of educational rights. This case arises in the context of a school district rule that prescribes the conduct of trained professionals.  Certainly, school districts should be able to reasonably expect that their trained and licensed teachers have an ordinary understanding of which "controversial" materials should be reviewed and approved before the teachers may provide those materials to elementary-aged students.

In this case, Cahall pleaded that she was personally aware that gender ideology and sexual orientation were considered "controversial" subjects in her school district.  Yet, despite that knowledge, she incorporated books with those themes into her elementary classroom without first obtaining approval.  She argues the books were not "instructional materials" yet admits she gave her students access to those books in a classroom setting.  School work rules need not precisely define

23

all possible circumstances in which an employee may be disciplined.  Rather, those rules simply must place the employee on notice that certain conduct *may* subject them to discipline.   Here, the district court properly concluded that Cahall's facial due process challenge failed as a matter of law.

### C. The Employment Rule At-Issue in this case is Not Unconstitutionally Vague as Applied to the Employee's Conduct.

**FOURTH ISSUE FOR REVIEW: The school board's controversial materials policies must only place a licensed teacher on notice that providing controversial books to students without prior approval could subject them to discipline.**

Cahall also presented an "as applied" challenge to Board Policy 2240.  The as applied challenge largely failed in the district court for the same reasons as her facial challenge.  Indeed, as the policy was applied to Cahall, there could be no plausible argument that it was unconstitutionally vague.  Cahall specifically admitted in her complaint that she was aware that questions of gender identity and sexuality were considered controversial within the New Richmond school district.   With that admission, she was precluded from arguing that the Board's "controversial materials" policy was vague as applied to her conduct.  Cahall had seen firsthand the complaints and controversy that ensued when these issues were raised in the school context.  And, in direct response that controversy, Cahall personally tried to get her own collection of LGBTQ books placed in the school library.  That request was denied.  When her request to incorporate the books into the school library was

24

denied, Cahall put the books in her own classroom for students to read without getting approval.

While the foregoing conduct was all discussed in the disciplinary notice issued to Cahall (and which was incorporated into the complaint), Cahall has invented a challenge to the school board's policy that amounts to a technicality. In essence, she argues that, if she did not personally hand controversial books to children and instruct those children to read from those books, then her conduct did not fall within the terms of the policy and she could not be disciplined. This is untenable, and federal courts should not be used for the purpose of literal workplace policy interpretation at the expense of professional accountability. As the district court noted, Cahall ignored that she was also disciplined for violating the administrative guideline, which governs the purchase and use of controversial resource materials. Moreover, Cahall ignored that she could be subject to discipline for the poor exercise of professional judgment without any policy at all.

A plaintiff asserting an as-applied challenge to vague statute or policy must show that the statute or policy in question failed to provide her with insufficient notice of what was required or proscribed. *Johnson v. Morales*, 946 F.3d 911, 929 (6th Cir.2020). This standard is objective. *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 490 (2d Cir. 2006)). The question is whether a "person of ordinary intelligence" would have "fair" (not

perfect) notice of what is prohibited. *Holder*, *supra*, 561 U.S. at 18. The question of vagueness when applied to Cahall does not turn on whether *she* actually knew her conduct was prohibited or whether *she* actually received a warning that she may be held to account for the behavior in question. *Dickerson*, 604 F.3d at 746. In fact, the question in this case should be whether a reasonable *teacher* would know, based upon the Board's policy and accompanying administrative guideline, that making controversial materials reading available to elementary school students without prior approval could subject her to discipline.

The Sixth Circuit has expressly rejected vagueness challenges "when [a party's] conduct clearly falls within a statutory or regulatory prohibition." *Fowler*, *supra*, 819 F.2d at 665; see also, *Holder*, *supra*, 561 U.S. at 20 ("[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.") (citation omitted). This suggests that when a party brings both a facial and an as-applied challenge for vagueness, the Court should address the as-applied challenge first. See *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). The district court recognized this in its decision, finding that Cahall could not assert either a plausible facial or as-applied challenge under the circumstances of this particular case. The school district appellees have maintained the order of issues appeal as presented by

26

Cahall, but this Court could conclude that this question is dispositive of both the facial and as-applied vagueness challenges.

Because the allegations in the complaint fully demonstrate that Cahall knew the subject matter of the books was controversial before she made them available to her students to read in the classroom, her "as applied" due process challenge was properly dismissed as a matter of law.

### D. The New Factual Allegations Incorporated into the Proposed Amended Complaint Did Not State a Plausible Constitutional Claim.

**FIFTH ISSUE FOR REVIEW: Non-specific allegations about library books did not create plausible viability for otherwise legally insufficient vagueness claims.**

On March 21, 2025, Cahall filed a motion to amend her complaint. (Doc. 17) The proposed amended complaint sought to add factual allegations in support of both the claim that the school board policy is vague and the claim of religious discrimination. (Doc. 17-1) Cahall alleged that she has discovered a popular children's book series in the elementary school library that included a gay character. (Doc. 17-1, ¶ 50) Although, she does not allege there is any reference to the sexuality of the character in the books in the library. She also alleged that there was a book in which an adolescent female is "boy crazy" and she complains the girls is wearing a bathing suit on the cover. (*Id*. at ¶ 51) She argued that these books could be considered "controversial" under Board policy depending on the reader's perspective. Cahall did not allege any facts to suggest that these books were not

27

reviewed by a book review committee prior to their placement in the library. She did not allege that the school librarian or other staff member had knowledge of potentially controversial materials contained within the books. She did not allege that any particular library employee circumvented the book review policy as she had done but was not disciplined.

In reviewing the policy at-issue in Cahall's complaint, it plainly governs the conduct of teachers, not school librarians. It governs the introduction and proper educational use of controversial issues into the classroom. As such, Cahall's new allegations about books that she found in the school library are misplaced. Separate policies govern the selection of materials for school libraries. Moreover, Cahall did not allege in her proposed amended complaint that the librarians incorporated the books she references without following Board policy on the selection of library materials. She merely alleges that those books exist in the library. This allegation does not remedy the pleading deficiencies.

A federal court may deny a motion for leave to file an amended complaint where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); see also *Carson v. United States Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011) ("leave to amend should be denied if the amendment . . . would be futile.") (citation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a

motion to dismiss." *Miller v. Calhoun Cnty*., 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres*., 632 F.2d 21, 23 (6th Cir. 1980)).

In determining futility, federal courts generally assess motions for leave to file an amended complaint under the Civil Rule 12(b)(6) standard. *Doe v. Michigan State Univ.*, 989 F.3d 418, 427 (6th Cir. 2021). Under that standard, the Court will "construe the complaint in the light most favorable to [the] plaintiffs, accept all the well-pleaded factual allegations as true, and draw all reasonable inferences in [the] plaintiffs' favor." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019). The factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

In this case, the district court considered the allegations of Cahall's proposed amended complaint alongside the factual allegations of the original complaint in deciding the school district defendants' motion for judgment on the pleadings. The

court concluded that the proposed additional factual allegations did not cure the legal deficiencies in original complaint.

### E. ALTERNATIVELY, DEFENDANT MILLER IS ENTITLED TO QUALIFIED IMMUNITY.

**SIXTH ISSUE FOR REVIEW: Even if there were some plausible constitutional violation alleged by the plaintiff, the school administrator would still be entitled to qualified immunity.**

In counts two, three and four of her complaint, Cahall sued Superintendent Miller in his individual capacity for alleged violations of her constitutional rights, including the right to due process, equal protection, and religious freedom. As explained above, there was no constitutional violation in this case as a matter of law. However, even if there were, Cahall cannot establish that the law surrounding said violations was clearly established by existing precedent sufficient to overcome Superintendent Miller's right to qualified immunity.

"Qualified immunity shields government officials from civil [individual] liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The purpose of qualified immunity "is not only protection from civil damages but protection from the rigors of litigation itself, including the potential disruptiveness

of discovery." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004) (citations omitted).

The Sixth Circuit undertakes a three-step analysis to determine whether an official is entitled to immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Id*. at 901. See *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009) (finding that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). In this case, the district court could have skipped over the first step of the qualified immunity analysis – the constitutional analysis – and it would have still found Superintendent Miller entitled to immunity.

Under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously

been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). See *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) ("In determining whether a constitutional right is clearly established, the court must first look to decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, and, finally to decisions of other circuits."). "This standard requires the courts to examine the asserted right at a relatively high level of specificity," and "on a fact-specific, case-by-case basis." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997).

In this case, Cahall failed to point to any existing legal precedent that would have clearly precluded a school superintendent from issuing minor discipline to a teacher who decided to incorporate books with sexuality content into her third-grade classroom library. The district court not only found no such legal authority existed, but also concluded there was no constitutional violation on the facts alleged. Consequently, in the event this Court were to overturn some aspect of the district court's decision, it must still conclude that Superintendent Miller is entitled to qualified immunity as a matter of law.

## VI.   <u>CONCLUSION</u>

For the reasons set forth herein and as fully supported by the record, this Court should affirm the decision of the district court.

Respectfully submitted,

s/Tabitha Justice
**BRIAN L. WILDERMUTH, ESQ. (0066303)**
**TABITHA JUSTICE, ESQ. (0075440)**
SUBASHI, WILDERMUTH & JUSTICE
50 Chestnut Street, Suite 230
Dayton, Ohio 45440
Tel:   (937) 427-8800
Fax:   (937) 427-8816
E-mail: tjustice@swohiolaw.com
*Counsel for Appellees*


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B).  Exclusive of the exempted portions, this brief contains 7,884 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and

the type-style requirements of Fed R. App. P. 32(a)(6) because this brief has been

prepared in proportionately spaced typeface using Times New Roman, 14-point

font.

s/Tabitha Justice
Tabitha Justice (0075440)

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was sent via regular U.S. mail on March 6, 2026, to the following:

**Mark P. Herron (0051998)**
herronlaw@msn.com
5001 Mayfield Road, Suite 212
Lyndhurst, OH 44124
*Attorneys for Appellant*


s/Tabitha Justice
Tabitha Justice (0075440)

<u>**ADDENDUM**</u>

# Designation of Record on Appeal

Sixth Circuit
Case No. <u>25-3880</u>                    Case Name: <u>*Karen Cahall v. New Richmond, OH*</u>
<u>*Exempted Village School District, et al.*</u>

Tabitha Justice, counsel for Defendants, New Richmond Exempted Village School District Board of Education, Tracey Miller, Todd Wells, Tim Dufau, Robert Wooten, Jonathan Zimmerman, and Amy Story, designates the following documents for inclusion in the electronic Record on Appeal:

Lower Court Case No. <u>1:24-cv-00688</u>
Southern District of Ohio, Western Division

| RE # | Document Description | Page ID # Range |
|---|---|---|
| RE # 1 | Plaintiff's Complaint | 1-25 |
| RE # 1-2 | Exhibit 1 to Plaintiff's Complaint | 27-28 |
| RE # 1-3 | Exhibit 2 to Plaintiff's Complaint | 29-30 |
| RE # 12 | Defendants' Motion for Judgment on the Pleadings | 52-71 |
| RE # 16 | Plaintiff's Brief in Opposition to Defendants' Motion for Judgment on the Pleadings; Cross-Motion for Partial Judgment on the Pleadings | 78-119 |
| RE # 17 | Plaintiff's Motion for Leave to File Amended Complaint | 146-149 |
| RE # 17-1 | Plaintiff's Proposed Amended Complaint | 150-174 |
| RE # 18 | Defendants' Reply in Support of their Motion for Judgment on the Pleadings and Memo in Opposition to Plaintiff's Motion for Partial Judgment on the Pleadings | 182-194 |
| RE # 19 | Defendants' Memo in Opposition to Plaintiff's Motion to Amend her Complaint | 195-201 |
| RE # 25 | Court's Opinion and Order | 306-334 |

1

| RE # 27 | Plaintiff's Notice of Appeal | 336-337 |